O

# United States District Court
# Central District of California

| | |
|---|---|
| ANGELA DE LEON, on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>STANDARD INSURANCE COMPANY,<br><br>Defendant. | Case № 2:15-cv-07419-ODW(JC)<br><br>**ORDER GRANTING DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT [58] AND DENYING AS MOOT PLAINTIFF'S MOTION FOR CLASS CERTIFICATION [55]** |

## I.   INTRODUCTION

This is a putative class action lawsuit against Standard Insurance Company ("Standard") under the Employee Retirement Income Security Act of 1974 ("ERISA"). Plaintiff Angela De Leon, who suffered an on-the-job injury, alleges that Standard unlawfully offset her workers' compensation benefits against disability benefits it awarded to her under an ERISA-governed welfare plan. Before the Court are Standard's Motion for Partial Summary Judgment and Plaintiff's Motion for Class Certification. For the reasons discussed below, the Court **GRANTS** Standard's Motion (ECF No. 58) and **DENIES AS MOOT** Plaintiff's Motion (ECF No. 55).[1]

---

[1] After considering the papers filed by the parties, the Court deems both Motions appropriate for decision without oral argument. Fed. R. Civ. P. 78(b); C.D. Cal. R. 7-15.

## II. FACTUAL BACKGROUND

Plaintiff was an employee of Charlotte Russe Holdings, Inc., during which time she participated in a group long-term disability insurance plan ("LTD Plan") issued by Standard. (*See* Standard's Statement of Undisputed Material Facts ("SUF") 1, 25.) Plaintiff contends that she paid 72% of the LTD Plan premium and that Charlotte Russe paid the remaining 28%. (Compl. ¶ 11; SUF 26.)[2] After suffering an on-the-job injury, Plaintiff received both temporary total disability workers' compensation benefits and LTD Plan benefits. (SUF 9–13.) However, Standard deducted the full amount of workers' compensation benefits she received from the LTD Plan benefits it awarded to her. (SUF 8, 14.)

On September 22, 2015, Plaintiff filed a Complaint, in which she asserts one class claim and two individual claims. (ECF No. 1.) In the class claim, Plaintiff alleges that Standard violated California Labor Code section 3751 by deducting more than 28% of the workers' compensation benefits she received from her LTD Plan benefits. (Compl. ¶¶ 11–12.) Moreover, because section 3751 is allegedly incorporated by operation of law into the terms of the LTD Plan, violation of that statute also constitutes a violation of the terms the LTD Plan and is thus actionable under 29 U.S.C. § 1132(a).

On January 28, 2016, this Court denied Standard's preemptive motion to deny class certification. (ECF No. 45.) In March 2016, Plaintiff affirmatively moved for class certification, and shortly thereafter Standard moved for summary judgment on

---

[2] Standard disputes this, although it is unclear if it only disputes how the premium was apportioned or if it disputes that Plaintiff paid any premium at all. (*See* Standard's Reply to Pl.'s Add'l Material Facts ¶ 26 ("The premium contribution calculation was erroneous, as set forth in the Deposition of Laurence Coleman. The percentage was the proportion of the taxable benefits, not premiums paid."), ECF No. 69.) Standard does not cite "particular parts" of Mr. Coleman's deposition transcript to support its position, Fed. R. Civ. P. 56(c)(1)(A), and the Court does not intend to comb through Mr. Coleman's 190-page deposition transcript to find the pertinent testimony. Thus, the Court will assume that the apportionment asserted by Plaintiff is correct for the purposes of the Motion for Summary Judgment. *See* Fed. R. Civ. P. 56(e)(2).

the class claim. (ECF Nos. 55, 58.) The parties each timely opposed and replied to the other's Motion. (ECF Nos. 62–69.) Both Motions are now before the Court for consideration.

### III. LEGAL STANDARD

Summary judgment should be granted if there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial burden of establishing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–24 (1986). Once the moving party has met its burden, the nonmoving party must go beyond the pleadings and identify specific facts through admissible evidence that show a genuine dispute for trial. *Id.*; Fed. R. Civ. P. 56(c).

A disputed fact is "material" where the resolution of that fact might affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1968). Conclusory or speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat summary judgment. *Thornhill's Publ'g Co. v. GTE Corp.*, 594 F.2d 730, 738 (9th Cir. 1979). Moreover, there must be more than a mere scintilla of contradictory evidence. *Addisu v. Fred Meyer*, 198 F.3d 1130, 1134 (9th Cir. 2000). Where the moving and nonmoving parties' versions of events differ, courts are required to view the facts and draw reasonable inferences in the light most favorable to the nonmoving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007). A court may not weigh conflicting evidence or make credibility determinations. *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007).

### IV. DISCUSSION

Before turning to the merits, Plaintiff's rather complex theory of liability on the class claim requires some elaboration. Section 3751(a) provides, in relevant part: "No employer shall exact or receive from any employee any contribution, or make or take any deduction from the earnings of any employee, either directly or indirectly, to

cover the whole or any part of the cost of compensation under this division." Cal. Lab. Code § 3751(a). The California Supreme Court has held that an employer that deducts workers' compensation benefits from other benefits to which the employee is entitled violates section 3751, because doing so effectively forces the employee to pay for his or her own workers' compensation benefits—at least where the employee paid the premium for those other benefits. *Symington v. City of Albany*, 5 Cal. 3d 23, 27 (1971); *City of Los Angeles v. Indus. Acc. Comm'n (Fraide)*, 63 Cal. 2d 242, 243 (1965); *but see Appleby v. Workers' Comp. Appeals Bd.*, 27 Cal. App. 4th 184, 187 (1994) (approving offset of workers' compensation benefits against other benefits paid for entirely by employer).

Building on this, Plaintiff contends that section 3751 also prohibits Standard—which is not Plaintiff's employer, but simply an insurer and administrator of a welfare benefits plan in which Plaintiff is participating—from offsetting her workers' compensation benefits against her LTD Plan benefits by a percentage that is greater than the percentage of the LTD Plan premium paid by the employer. (Compl. ¶¶ 11–12.) Thus, because Charlotte Russe paid only 28% of the LTD Plan premium, Plaintiff contends that Standard was not permitted to deduct more than 28% of her workers' compensation benefits from her LTD Plan benefits. (*Id.*) Moreover, Plaintiff contends that state law automatically incorporates the requirements of section 3751 into the terms of the LTD Plan, and thus Standard has effectively breached those terms by not complying with section 3751. (Opp'n 8, ECF No. 64; Pl.'s Add'l Material Facts 3, ECF No. 65.) And where an insurer denies benefits owed to an employee under the terms of an ERISA-governed plan, that employee may bring an action under 29 U.S.C. § 1132(a). (Opp'n 8.)

### A. Motion for Partial Summary Judgment

Plaintiff's theory of liability fails for a simple reason: neither the text nor the purpose of section 3751 supports its application to non-employers like Standard. Not only does section 3751 expressly apply only to "employers," but the fact that non-

employers are not responsible for the costs of compensation demonstrates the fallacy of trying to rope them into the statute's reach.

In interpreting a California statute, federal courts "are bound by California rules of construction." *In re Anderson*, 824 F.2d 754, 756 (9th Cir. 1987); *see also In re Goldman*, 70 F.3d 1028, 1029 (9th Cir. 1995). In California, interpretation of a statute "begin[s] with its text, as statutory language typically is the best and most reliable indicator of the Legislature's intended purpose. [The court must] consider the ordinary meaning of the language in question as well as the text of related provisions, terms used in other parts of the statute, and the structure of the statutory scheme. If the statutory language in question remains ambiguous after [the court] consider[s] its text and the statute's structure, then we may look to various extrinsic sources, such as legislative history, to assist [the court] in gleaning the Legislature's intended purpose." *Larkin v. W.C.A.B.*, 62 Cal. 4th 152, 157–58 (2015) (citations omitted).

### 1. Text

The statute, by its terms, applies only to "employer[s]." *Id.* The California Labor Code defines "employer" as "[e]very person including any public service corporation, which has any natural person in service." *Id.* § 3300(c). While Standard is obviously an "employer" in the sense that it is a company that employs people, the relevant consideration is whether it is *Plaintiff's* employer—which it indisputably is not. (*See* SUF 25 ("De Leon was an employee of Charlotte Russe . . . ."); Compl. ¶ 5 ("Plaintiff . . . was an employee of Charlotte Russe . . . ."); *id.* ¶ 6 (noting that "[w]ith respect to the allegations contained [in this Complaint]," Standard was acting simply as an ERISA plan fiduciary).) Thus, the statute by its terms does not apply to Standard.

### 2. Purpose and Structure

Moreover, neither the purpose nor the structure of either section 3751 or California's general workers' compensation scheme suggests that the statute should apply to Standard. Workers' compensation laws were originally enacted "to eliminate

the three common law defenses that had prevented recovery for injuries received on the job: contributory negligence, assumption of risk, and fault of a fellow employee. Employees were relieved of these defenses and given the certainty of financial and other benefits whenever the 'conditions of compensation' were established. In exchange, employers were given an exemption from civil actions for damages." *Hisel v. County of Los Angeles*, 193 Cal. App. 3d 969, 974–75 (1987). However, to prevent employers from avoiding *sub silentio* both civil liability *and* compensation liability, section 3751 prohibits employers from receiving any "contribution" from employees that has the effect of paying the "cost of compensation." Cal. Lab. Code § 3751(a); *see also Rodriguez v. RWA Trucking Co., Inc.*, 238 Cal. App. 4th 1375, 1396 (2013) (section 3751 "require[s] the employer to bear the entire cost of securing compensation").[3]

Plaintiff argues that Standard's conduct has this prohibited effect. That is, Standard reduced her LTD Plan benefits—for which she paid 28% of the premium—because she received workers' compensation benefits, which in turn reduces the cost of LTD Plan premiums paid by Charlotte Russe, and thus ultimately helped Charlotte Russe defray the cost of compensation. This theory, while superficially appealing, is ultimately untenable for three reasons. First, Plaintiff presents no evidence to support it. When Standard offsets LTD Plan benefits, one of three things happens: (1) the offsets result in a lower average payout to LTD Plan beneficiaries, and Standard passes those savings onto Charlotte Russe through lower premiums; (2) the offsets result in a lower average payout to LTD Plan beneficiaries, and Standard retains those savings for itself; or (3) Standard uses the offsets to increase the pool of money available to LTD Plan beneficiaries, resulting in a *higher* average payout to such

---

[3] Moreover, to ensure that eligible employees actually receive their compensation benefits, employers are required to purchase workers' compensation insurance. Cal. Lab. Code § 3700(a); *Tucci v. Club Mediterranee, S.A.*, 89 Cal. App. 4th 180, 192 (2001).

beneficiaries.[4] Plaintiff assumes that the offsets here result in the first outcome, but has not submitted any evidence to show that this is in fact the case. Such assumptions are inadequate to survive summary judgment.[5] *Celotex Corp.*, 477 U.S. at 322–24 (holding that the moving party is not required to "support its motion with affidavits or other similar materials *negating* the opponent's claim," and that summary judgment is appropriate where there is "a complete failure of proof concerning an essential element of the nonmoving party's case").

The second problem is that it is not even clear that the first outcome would turn Plaintiff's theory into a viable one. The fact remains that section 3751, by its terms, does not command non-employers to do or not do *anything*. While it is true that the first outcome would be somewhat contrary to the purpose of section 3751 in that it would effectively require employees instead of employers to cover the cost of compensation, this is insufficient to broaden the statute's scope beyond its express terms. *Clayworth v. Pfizer, Inc.*, 49 Cal. 4th 758, 770 (2010) ("If the text is sufficiently clear to offer conclusive evidence of the statute's meaning, we need look no further."). The statute might allow Plaintiff to pursue an action against Charlotte Russe for receiving this purportedly illegitimate benefit, but it quite clearly levies no sanction against Standard for offsetting LTD Plan benefits and then lowering Charlotte Russe's premiums.

Third, imposing liability here would not—at least in the long run—make a

---

[4] This practice, called "integration," is common in ERISA-governed pension plans, and has been approved by the U.S. Supreme Court. *See Alessi v. Raybestos-Manhattan, Inc.*, 451 U.S. 504, 514 (1981); *see also Isner v. Minn. Life Ins. Co.*, 677 F. Supp. 2d 950, 962 (E.D. Mich. 2009) (upholding integration practices for welfare plans). Given the Court's conclusion that section 3751 does not apply here, the Court avoids the thornier issue, argued extensively by the parties, whether section 3751 as applied to welfare benefit plans is preempted by ERISA in the first instance, and whether it is then saved from preemption under ERISA's saving's clause.

[5] And because Plaintiff does not argue that Standard's Motion is premature, the Court declines to defer ruling on the Motion to allow for additional discovery. *See* Fed. R. Civ. P. 56(d) (court may defer ruling on a summary judgment motion only where "nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition"); *Michelman v. Lincoln Nat. Life Ins. Co.*, 685 F.3d 887, 892 (9th Cir. 2012).

1 meaningful difference to the employee, because ERISA plan fiduciaries could impose these same offsets and yet completely avoid liability by just keeping the savings for itself (rather than lowering the employer's premium).  And if Plaintiff's answer to *that* is to impose liability there as well, then the statute would become completely unmoored from its text, for the courts would be using it to impose liability not just on non-employers, but where the non-employer's acts do not reduce the cost of compensation to the employer *at all*.

### 3. Case Law

Finally, none of the cases Plaintiff cites helps her.  Plaintiff argues that *Quinn v. State of California*, 15 Cal. 3d 162, 166 (1975), and *Anderson v. Union Oil Co.*, 49 Cal. App. 3d 968, 971 (1975), support the proposition that section 3751 applies to insurers as well as employers.  The Court disagrees.  *Quinn* concerned a tort action filed by an injured employee against a third-party tortfeasor, wherein the compensation carrier had filed a lien against the judgment obtained by the employee.[6]  15 Cal. 3d at 164–66.  The issue before the court was whether Labor Code section 3856 allowed any part of the employee's attorney's fees to be deducted from the lien.  *Id.*  In holding in the affirmative, the court made the passing observation that construing section 3856 otherwise "would raise questions of conflict with the policy announced in section 3751," and would likely "negate the legislative intent" behind that statute.  *Id.* at 170–71.

*Quinn* does not help Plaintiff for two reasons.  First, the court's pronouncements concerning section 3751 appear to be dicta, and are thus not binding on this Court.  *E.g.*, *Exp. Grp. v. Reef Indus., Inc.*, 54 F.3d 1466, 1471 (9th Cir. 1995); *Ng v. State Pers. Bd.*, 68 Cal. App. 3d 600, 606 (1977).  Second, as previously noted,

---

[6]  Where a compensation carrier has paid benefits to an injured employee, the carrier is entitled to reimbursement from any culpable third party (i.e., non-employer) that caused the employee's injury.  Cal. Lab. Code § 3852.  To that end, the carrier may assert a lien against any judgment secured by the employee against the tortfeasor.  *Id.* § 3856(b).

1  the Court does not necessarily disagree that Standard's alleged conduct detracts from
2  the policy underlying section 3751. However, the Court cannot ignore the plain
3  language of the statute simply to further that policy.
4      *Anderson* is even less on point. There, the court permitted the employer to
5  offset workers' compensation benefits against a sick pay plan funded entirely by the
6  employer. 49 Cal. App. 3d at 974. Nowhere does the court state that the sick pay plan
7  was administered or otherwise paid out by an insurance carrier, and thus it is unclear
8  what bearing that case has on the issue at hand.
9      None of the remaining cases cited by Plaintiff in Opposition to the Motion for
10 Summary Judgment applies section 3751 to an entity other than the plaintiff's direct
11 employer. *See Summers v. Newman*, 20 Cal. 4th 1021, 1032 (1999) (applying *Quinn*
12 regarding the division of attorneys' fees award between employer and employee);
13 *Symington*, 5 Cal. 3d at 26 (holding that "the City of Albany may reduce the pension it
14 pays to retired policemen and firemen who also receive workmen's compensation
15 benefits by an amount proportional to the city's contribution to its pension fund");
16 *Fraide*, 63 Cal. 2d at 253 (limiting the City of Los Angeles' ability to offset workers'
17 compensation benefits against disability pension benefits); *Albillo v. Intermodal*
18 *Container Servs., Inc.*, 114 Cal. App. 4th 190, 194 (2003) (holding that where an
19 independent contractor opts into workers' compensation coverage, employers could
20 not require them to pay the cost of such coverage); *Appleby*, 27 Cal. App. 4th at 187
21 (affirming offset of workers' compensation benefits against a benefits plan paid for
22 entirely by employer); *Lyons v. Workmen's Comp. Appeals Bd.*, 44 Cal. App. 3d 1007
23 (1975) (holding that the City of Los Angeles was entitled to credit disability pension
24 payments already made against a workers' compensation award); *Cavoretto v. City of*
25 *Richmond*, 270 Cal. App. 2d 726 (1969) (City of Richmond not permitted to offset
26 pension payments with workers' compensation benefits); *Austin v. City of Santa*
27 *Monica*, 234 Cal. App. 2d 841, 845 (1965) (City of Santa Monica prohibited from
28 deducting sick leave for each day of workers' compensation paid to an employee);

1 *Lewings v. Chipotle Mexican Grill, Inc.*, No. B255443, 2015 WL 5566213, at *4 (Cal. Ct. App. Sept. 22, 2015) (holding that employer effectively received contributions from employees to cover the cost of workers' compensation coverage).

For these reasons, the Court concludes that Standard did not violate section 3751. Thus, even if state law does incorporate that statute into the LTD Plan's terms, Standard did not violate those terms. As a result, Standard is entitled to judgment as a matter of law on Plaintiff's class claim. Fed. R. Civ. P. 56(a).

### B. Motion for Class Certification

Given the Court's ruling on Standard's summary judgment motion, the Court declines to adjudicate Plaintiff's class certification motion. A district court has the discretion to grant a motion for summary judgment before it decides whether to grant class certification "where it is more practicable to do so and where the parties will not suffer significant prejudice." *Wright v. Schock*, 742 F.2d 541, 543 (9th Cir. 1984). The Court concludes that *Wright* applies here. First, determining whether to certify a class is a complex and time-consuming endeavor, especially where it involves a claim as complicated as the one Plaintiff asserts, and thus denying the motion as moot and without prejudice is certainly more practical and economical than adjudicating the motion. *Id.* at 545–46.

Second, the Court fails to see any cognizable prejudice to either party by not adjudicating the motion. There would be no prejudice to either Plaintiff or the putative class; indeed, the grant of summary judgment makes denial without prejudice of the class certification motion the *least* prejudicial outcome for the class members, for it prevents them from being bound to an adverse judgment and thus preserves their ability to bring the same claim (either individually or as a class) in future. As to Standard, the Court concludes that by opposing class certification, Standard has "assume[d] the risk that summary judgment in his favor will have only stare decisis effect [and not res judicata effect] on the members of the putative class," and thus it will suffer no cognizable prejudice. *Id.* at 544. The Court also notes that denials of

class certification have no preclusive effect on putative class members, *Smith v. Bayer Corp.*, 564 U.S. 299, 312–17 (2011), and thus Standard is not prejudiced by missing out on a potential court order that denies certification on the merits.

## V.  CONCLUSION

For the reasons discussed above, the Court **GRANTS** Standard's Motion for Partial Summary Judgment. (ECF No. 58.)  The Court also **DENIES AS MOOT** and without prejudice Plaintiff's Motion for Class Certification. (ECF No. 55.)

**IT IS SO ORDERED.**

May 5, 2016

_____
**OTIS D. WRIGHT, II
UNITED STATES DISTRICT JUDGE**